UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Darryl Keith Louis Jr.,) C/A No. 1:25-3494-BHH-SVH
         Plaintiff,          )
                             | PLAINTIFF'S OBJECTION TO
    v.                       | THE MAGISTRATE'S REPORT
Joel Anderson,               | AND RECOMMENDATION [ECF 90]
David Sane,                  |
         Defendants.         |
                             )

On April 20, 2026, magistrate Judge Shiva V. Hodges issued a Report and Recommendation recommending that the District Judge "grant Defendant's motion for Summary judgment, deny Plaintiff's motion for injunctive relief and for summary judgment, and deny as moot Plaintiff's motion in limine, dismissing Plaintiff's claims without prejudice." [ECF 90 at 10]. The Plaintiff, hereinafter referred to as "Sadiq" objects to the recommendation on the following bases:

I. On pages 2 of the R/R, the Magistrate Judge is critical that the Plaintiff, Sadiq did not dispute Defendant's assertions that SCOC policies do not specifically address, allow, or disallow, a Muslim inmate from wearing henna in his beard, receiving a certified Halal diet, or receiving gifts/charity from family and friends." [ECF 90 at 2] Significant however, is that Sadiq's lack of response was no fault of his own. ~~the same~~
On the same day     Sadiq was served a copy of ECF 89, the Magistrate Judge had ~~already~~ made her report/recommendation on the matter. Coincidently, the same day, Sadiq filed of ECF 89 Extension, but mistakenly wrote the wrong address [see attached Suppl'm Decl. of Sadiq at P. 1-3; also see returned envelope and "Plaintiff's Motion For Extension of Time To File Surresponse To Defendants Reply To Plaintiff's Response in Opposition To Defendants Memorandum In Support Of Motion For Summary Judgment"]
Considering that Sadiq is a Pro Se litigant without access to the ECF System and/or Pacer.com, he is at the mercy of both the U.S.P.S and the institutional mailroom delivery procedures and schedule. At any rate, despite U.S. Dist. Ct. Rules D.S.C., Civ Rule 7.07 (governing the seven [7] day time frame to reply to subsequent documents filed) the Magistrate made her R/R on the six [6] day, so it would have been impossible for the Court to have received a reply

pg. 1 of 22

from Sadiq addressing any arguments raised in ECF 89, before the Magistrate filed her R/R absent an extension to do so. Despite the above-mentioned, the Magistrate has overlooked the responses of various SCDC officials (to include the defendants) to Sadiq's grievances and their own answers to Interrogatories and briefs. For example:

a) In each of Sadiq's Grievances, the responding officials cite a specific Policy/Procedure supporting there reasoning to disallow Sadiq's requests [see attachments to ECF 1];

b) David Sane's admission in his affidavit that "SCDC policy restricts an inmate's ability to alter their appearance, including changing hair color." [see ECF 59-3 at P. 7] (Ironically, the Magistrate notates this in her ftnt. of pg. 3 of her R/R);

c) David Sane's admission in his affidat that "SCDC does not permit such packages ~~directly from family members and friends~~ to be received directly from family members or friends." [see Id. at 10];

d) The defendant Anderson clearly understands that Sadiq is seeking a "Certified Halaal diet with certified Halaal meat," yet cites "Section 12.2 of the SCDC Policy No. PS-10.05 titled Inmate Religion" in his Response as to what type of diet (vegetarian) that ~~offered~~ is offered for inmates seeking a Halaal diet. [see ECF 39-1 at pg. 5-6 (Response #11); also see ECF 59-1 at pg. 12-15 (defendant explaining why SCDC won't provide ritually slaughtered meat to inmates)]

It's noteworthy that the Magistrate stated that "[Sadiq] identifies multiple relevant SCDC policies [see ECF No. 52 at 1-3]" on pg. 2 of her R/R, but left off his assertions immediately following:

"Because of the above-mentioned policies, Sadiq is forced to forgo ① wearing/applying henna in his greying beard; ② consuming a halaal certified diet that consist of (daily) halaal meat; and ③ accepting gifts/charity from his family/friends." ~~[see 52 at pg. 1]~~ [see ECF 52 at pg. 3]

On pg. 8-9 of the Magistrate's R/R, the judge understandably reasoned "that the controversy is not yet final" and "there is no evidence in the record that Plaintiff has requested an amendment or change to the Al-Islam portion of the SCDC Handbook pursuant to section 4.7 for any of the practices or modifications of current practices about which he is suing and seeking injunctive relief." In doing so, the Magistrate relied on a recent ruling in this court, Lewis v. Anderson, C/A No. 1:25-2958-BHH, 2026 WL 836383, at 1 (D.S.C. Mar. 26, 2026).

However, in the case of Collins v. Johnson, C/A No. 2:23-cv-05736-RMG-MGB, 2025 WL 3530126 at 11-12 (USDC, DSC, Nov. 17, 2025) the Court stated the following:

"An Administrative remedy is not considered to have been available if a prisoner through no fault of his own, was prevented from availing himself of it.' Moore v Bennette, 517 F.3d 717, 725 (4th Cir. 2008). In Ross v. Blake, the Supreme Court set forth three scenarios where the administration process is considered "unavailable": (1) the administrative process "operates as simple deadend - with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) the administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) the 'administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation' 578 U.S. 632, 136 S.Ct. 1850, 1853-54, 195 L.Ed.2d 117 (2016).

The examples provided in Ross with respect to the first scenario indicate that a deficiency of this type would be systemic or widespread, or at least not isolated. See Ross, 136 S.Ct. at 1859 (giving the following examples of when an administrative remedy is a dead end: when a prison handbook directs inmates to submit their grievances to a particular administrative office, but in practice that office disclaims authority to consider them, or when administrative officials have apparent... ... .. ... ..

pg. 3 of 22

authority but decline ever to exercise it), with respect to the third scenario, Ross seems to require that, to prevail on an assertion that prison officials thwarted his efforts to exhaust, an inmate must be able to demonstrate something more than isolated negligence on behalf of prison officials. Id. at 1860 n.3 (citing cases where correctional facilities staff mislead the inmate about the existence of a process or its rules; used threats or intimidation; or misled him into thinking he had done everything necessary to use the process).

To prove unavailability, the inmate must 'adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure; Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011). 'The district court is obligated to ensure that any defects in exhaustion were not produced from the action or inaction of prison officials.' Zander v. Lappin, 415 App'x 491, 492 (4th Cir. 2011)(quoting Aquilar — Avelloveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007))."

[Collins, supra 2025 WL 3530126 at 11-12]

A) In regards to Sadiq's claim about the use of Henna, it is indisputable that Sadiq initiated an Automated Request To Staff Member (ARTSM) Chaplain Smalls [see ECF 52 at 4, also ECF 1 attachments]. Although Sadiq does not contend that the request included supporting information from official written documents, he does argue that it's of no fault of his own.

For starters, "ARTSM" is an electronic messaging system. [see Suppl'm Decl. of Sadiq at P 4-8    ]. SCDC Policy GA-06.04(2) states, in relevant parts:

...,"When the receiving staff member determines that an **alternative** communication method..... is more appropriate, the staff member will provide this explaination to the inmate" Id. at 1.3;

...,"The RTSM must be used for all staff/inmate correspondence other than grievances and disciplinary appeals. No other written forms shall be accepted in place of the RTSM. No attachments will be accepted." Id. at 2;

"When requested by staff, inmates may provide additional information pertaining to their **questions** or **concerns**" Id. at 2.3

Further Sadiq requests this Court to take judicial notice to RLUIPA case Louis v. Anderson, et al, C/A No. 1:25-6453-BHH-SVH, wherein he submitted a Declaration dated April 18, 2026, with supporting

...cuments. Beginning at paragraph 4-6, Sadiq stated, "Further, according to WCCI Institutional Grievance Coordinator (IGC) Mrs. Glennetta Saxton, 'No additional pages will be permitted. All information must be placed on (one) 1 SCDC Form 10-S, 'Inmate Grievance Form', in the space designated as 'statement of Grievance'. [see attached Inmate Grievance Form (Grievance No. WRCI-0085-25) and "Monthly Prayer Times of Ridgeland" document. (A seperate unrelated grievance)]..... This grievance was submitted at the same institution as my grievance for 'possession of oils', in the same month, and handled by the same IGC...... It's noteworthy that I explained my reasoning for including supporting documentation was because the 'SCDC 10-S' Grievance Form, itself says that I could on the actual form. And when I showed it to her while she was serving me her response, she stated, 'these forms are out-dated.'"

Notwithstanding the previously mentioned, SCDC Policy GA-01.12 (13.7), does indeed read,
.... "Additional pages will not be permitted. All information must be placed on the 10-Sa Inmate Grievance Form. The grievant will not write on the back of any Step 1 or Step 2 form".....
[availabe at http://www.doc.sc.gov/policy/policy.html]

In sum, the aforementioned shows salient practices/procedures of SCDC that prohibit inmates like Sadiq from providing the necessary information to the Chaplain to be reviewed. Despite this forestallment, at no time (from Sadiq's initial request to the Chaplain, thru out the grievance process, or even to-date of this brief) has any SCDC official attempt to meet with Sadiq to discuss this particular request ~~⬛⬛⬛~~; nor did they afford Sadiq the opportunity to communicate his request directly to the chaplain as required by the policy; nor did they attempt to gather the necessary information to support Sadiq's request to be accommodated with henna for his greying beard. ~~⬛⬛⬛~~ [see Attached suppl'm. Decl. of Sadiq at P. 9 ]

It's noteworthy, that a few months prior to Sadiq's request about the henna for his beard, he submitted ARTSM No. 24-03599431 to the chaplain stating,
"I am Muslim and would like to receive a pastorial counsel visit,

Respectfully, Louis". The response to the ARTSM No. 24-0359943 was, "Forwarding to Chaplain Smalls". [see attached Suppl'm. Decl. of Sadiq at P. 10-11] Among the topics that Sadiq intended to discuss with the Chaplain are all of the RLUIPA matters that Sadiq filed in this Court subsequent his filing suit of the matter relating to growing his beard at a fists length. However, the chaplain never scheduled the requested meeting the entire time Sadiq was housed there nor did he address Sadiq about it. Id. at P. 11-13

At this juncture, it is clear that Sadiq can not initiate a meeting with the Chaplain, similarly, he can not force the Chaplain to forward his request to either the Chief Pastorial Branch or the Policy Annual Review Committee either, as the policy requires.

In earlier pleadings (ECF 52 at 5), Sadiq cited Incumaa v. Stirling, 2024 WL 4344743 at 12 ("When prison officials forego a rejection on procedural grounds and...... elect to research, analyze, and deny a claim on the merits, the purposes of the exhaustion requirement are satisfied.")

Significant however, is that Sadiq's accommodation request for the use of henna was dealt with exactly how SCDC dealt with Incumaa's request for recognition of his NGE belief. Consequently, the Court in Incumaa's case concluded the following:

"To the extent Incumaa failed to exhaust his remedies by not communicating his request directly to the Chaplain, as required by the Policy, the court notes Chaplain Cannon's testimony that the meeting between the inmate and the Chaplain cannot be initiated by the inmate. ECF 95 at 29:10-30:13. It does not appear that anyone from the Chaplain's office ever contacted Incumaa to initiate this meeting or gather the necessary information. Tr. at 52:10-53:12, 65:6-23, 96:13-17. Therefore, to the extent speaking with the Chaplain was a step in the exhaustion process that Incumaa did not fulfill, the court finds that this was an unavailable administrative remedy. See 42 U.S.C. § 1997e(a)("No action shall be brought with respect to prison conditions.......until such administrative remedies as are available are exhausted.'(emphasis added)); Ross v. Blake, 578 U.S. 632, 642 (2016)("The exhaustion requirement hinges on the 'availability of administrative remedies.") Id. at 13

Therefore, in regards to Sadiq's claim involving the use of henna, the defendants ripeness/justiciable argument is a nonstarter, accordingly Sadiq objects to the Magistrates R/R.

B) The defendants cite and mainly rely on this Court's recent ruling in <u>Louis v. Anderson</u>, 2026 WL 836383 (D.S.C. 2026), determining that Sadiq had "not shown that SCDC's current 'Inmate Religion' policy explicitly prohibits the wearing of a kufi outside of the institutions or that he has taken the appropriate steps, as dictated by Section 4.7, to seek a change to SCDC's current policy on wearing a kufi." [see pg. 2 of Def.'s Reply To Plaintiff's Response In Opp. To Def.'s Memo. In Supp. of Mot. For Sum. Judg.] Even so, Sadiq disagrees and opines that Section 4.7 of SCDC Policy PS-10.05 is impracticable. In support, Sadiq shows the following to the court:

On the same day this Court made its ruling in <u>Louis v Anderson</u>, 2026 WL 836383 (Louis II), Sadiq submitted an ARTSM to his current institution's chaplain, in the exact manner that the defendant has repeatedly asserted how it should have been done regarding a revision in the policy to allow the wearing of a kufi while off of institutional grounds. [see attached RTSM Chaplain Hankerson] Notably, the Chaplain's disposition reads,

"Inmate D. Louis, Sorry I don't revise or write policies. If you have a problem wearing your kufi during worship or at the institution please let me know".

Subsequently, on April 2, 2026, Sadiq submitted a Step-1 Grievance Form (Grievance No. TRCI-0064-26)(attached hereto) stating among other things,

...."My request was not forwarded to the Chief, Pastorial Care Services along with the recommendation of the institution-al Chaplain to be considered at the time of the policy's annual review."

The interesting paradox in <u>Louis II</u> and the previously mentioned grievance, is the IGC's action taken wherein she concluded that Sadiq had "failed to obtain an informal Resolution from the

appropriate department by sending a KIOSK Request To Staff Member (ARTSM) addressing [his] concerns prior to this grievance" [see attached Grievance No. TRCI-0064-26, Step-1 Form]

Clearly this would **baffle** even the most skillful inmates at availing themselves to administrative remedies, so on April 7, 2026, Sadiq submitted ARTSM No. 26-04348021 directly to IGC J. Franklin stating,

"In Re: Grievance No. TRCI-0064-26, Ma'am, I am so confused and simply ask of you to inform me of the 'appropriate department' to submit my request regarding the wearing of my kufi while off of institutional grounds. Respectfully, Louis" [see attached Suppl'm. Decl. of Sadiq at P.14-15]

In response, the IGC wrote,

"Inmate Louis, since you are attempting to have a **security policy** updated to accommodate religious beliefs, **HQ Policy Development, HQ Security** and possibly **HQ Religion** should be addressed. With that said, you do have 10 days from receipt of your grievance to write a paper request to staff member to the Grievance Branch Chief to have your grievance reviewed. If you choose this option, be sure to attach your copy of the grievance being challenged. I hope this helps. J. Franklin, IGC" Id.

Later that day, the IGC ~~added another correspondend ARTSM~~ sent another correspondence to Sadiq adding to the ARTSM mentioned above stating,

"Inmate Louis, after further review, the issue you raised in your grievance TrCI-0064-26 is a **duplicate** issue and cannot be grieved again. You will receive a **corrected** grievance stating such. Signed, J. Franklin, IGC" [see Decl. of Sadiq at P 16-17, also see "corrected action grievance Step-1" (both attached hereto)]

It is **clear** that Sadiq's case involving his kufi falls into all three of the scenarios layed **out** in the Supreme Court's ruling in Ross. Considering that the Magistrate Judge "cannot discern a relevant distinction between the previous case and the case presently before the court" (ECF **90 at 9**), then likewise, this case falls into all three of the scenarions layed out in Ross. In fact, all of Sadiq's RLUIPA cases past/present do.

pg. 8 of 22

Sadiq requests the Court to take judicial notice to Louis v Stirling, C/A No. 1:24-cv-00759-BHH-SVH, ECF 21-8 at pg. 13. In that case (Louis I), Sadiq requested of the Chaplain to grow his beard to "four (4) inches and/or at fist-full length". The chaplain's response was "Security is obligated to follow whatever policy says - you might want to kiosk [security]". No staff member (including the chaplain) sought to meet with Sadiq, ask for his supporting info, nor did they forward Sadiq's request to the Chief Pastorial Branch and/or Policy Review Committee. [see attached Decl. of Sadiq at P. [8-19]

Likewise, Sadiq request the Court to take judicial notice to Louis I at ECF 21-8, pg. 12. Therein, Sadiq makes another accommodation request to the Chaplain to receive his medication after his fasting for the day has either begun or ended. Notably, the chaplain refers Sadiq to Medical and that Sadiq would have to do so himself instead of in accordence with section 4.7 of the Religious Policy.

In addition, Sadiq request the Court to take Judicial Notice to the attachments of ECF 1 in Louis v. Anderson, 1:26-cv-00680-BHH-SVH (Louis III). The attachment entitled Inmate Grievance Form Step-1 (Grievance No. TRCI-0223-25), states in relevant part, (attached to ECF 1 of Louis III)

" .... Initially, I attempted to informally resolve/grievance by way of the chaplain, however, pursuant to ARTSM No. 25-04150641, I reattempted to informally resolve/grievance the situation by way of the "Policy tab, Level 2 at HQ".

Before Sadiq quote the text of the ARTSM No. 25-04150641, he urges the Court to see ① the attached RTSM hereto, dated 10/10/25, and submitted to the institutional chaplain (Hankerson); ② the attached hereto Inmate Grievance Form Step-1 (Grievance No. TRCI-0222-25); and ③ the attached hereto RTSM form submitted to Felicia Mckie (Chief Branch Grievance) dated 10/27/2025.

In ARTSM No. 25-04150641, submitted directly to the IGC, Sadiq stated the following,

"In Re: Grievance No. TRCI-0222-25.... if not the chaplain, please advise me of whom the appropriate supervisor or staff member is that I should address my "religious concerns to about obtaining religious books from non-approved publication/vendors.... Respectfully, Louis".

And the IGC responded with the following,

"Inmate Louis, Inmate Correspondence Privileges policy PS-10.08

pg. 9 of 22

was updated to state the following: [9.1] Inmates may receive single copies of publication books, if paid for in advance by the Inmate, a family member, or friend, that are sent directly to the inmate from one of the approved vendors listed below: Hamilton Books, Books N Things Warehouse, Ebooks 2 Inmates, Books To Inmates.com, (change in PURPLE amended by change 3, dated October 16, 2025), Sure Shot Books Publishing, LLC Barnes & Noble (online only), Books-A-Million (online only). You should address the **policy tab, level 2 at HQ, regarding these changes.** The Chaplain has no control over the approved vendor list. signed J. Franklin, IGC" [see attached hereto Decl. of Sadiq at P. 20-21 ]

Further, as the Court is well aware, Sadiq has claims regarding ① approved inmate-vistors to participant in the annual Eid events, and ② for the celebration of the annual Eids to take place outside in an open area within the institution, among other claims in <u>Louis v Anderson, et al</u>, C/A No. 1:25-294-BHH-SVH (Louis Ⅳ). In regards to the initial request for approved inmate-vistors to participate in the two annual Eids, Sadiq submitted ARSTM No. 24-03631039 directly to the Chaplain. ~~Stating~~ However, the Chaplain's response was,

"Unfortunately, we do not allow visitors to participate in the Eids due to security reasons."

Likewise, Sadiq sent an ARTSM No. 24-03660561 directly to the Chaplain regarding the celebrating of the Eids in outside open area within the institution. But the response was only,

"Forwarding to Chaplain Smalls."

From the date Sadiq submitted those two ARTSU's, ~~█████████~~ and even til now, no staff member has ever sought to meet with Sadiq regarding the two requests just mentioned, nor have they sought to ~~meet with him to discuss~~ obtain Sadiq's supporting information about those religious practices. [see attached hereto Decl. of Sadiq at P. 22-25 ]

Furthermore, these ~~█████~~ deferrals of SCDC are not exclusive to Sadiq, or **Incumaa** (<u>Incumaa</u>, supra at.18). The same occured with inmate Devodus A. Rouse, most recently. [see attached Decl. of Sadiq at P. 26-30 ; also see attached hereto ① RTSU from Devodus Rouse to the institutional chaplain dated 3/2/26; ② Inmate Grievance Form Step-1, from Devodus Rouse, (Grievance No. TRCI-0049-26; and ③ RTSU from Devodus Rouse, dated 3/16/26, to Felicia McKie (chief Grievance Branch); ④ Step-1 & Step-2 Grievance Forms (Grievance No. TRCI-0061-26).

Notwithstanding the aforementioned, Sadiq has experienced incidences wherein he initiated his request thru the Chaplain, but SCDC officials shirked their duties in regards to Section 4.7 of the Religious Policy. For example, ~~another of Sadiq's~~ ~~Request claim in being settled these, CA No. 25 2~~ ~~law~~, see attached hereto Inmate Grievance Form Step-1 (Grievance No. KCI-0509-25) and attached RTSM dated 8/13/2025. In response to Sadiq's Requested Religious Accommodation, the Chaplain incredulously stated,

"You are not classified as Muslim sir. You need to change your religious preference in classification."

Even if Chaplain Latto believed in his/her error mentioned above, Section 5.3 of the "Handbook of Inmate Religious Practice" under the Chapter entitled "Al-Islam" (Muslim) clearly states,

"Inmates in a Restrictive Housing Unit (RHU), who decide to become Muslim will be interviewed by the institutional chaplain to make a preliminary verification, and then will be referred to a Muslim Chaplain for a final verification. The institutional chaplain can approve or deny the request based on the inmate's basic knowledge of Al-Islam." During that time, Sadiq was housed at Kirkland Reception & Evaluation Center and assigned to Intake Status which is a form of Restrictive Housing. [see attached Decl. of Sadiq at P__31__] Despite this fact, the Chaplain did not attempt to even interview Sadiq before a staff member of Classification could change what could've of been a misstated religious preference.

Moreover, the Court is also aware of a 2015 ARTSM regarding his beard mentioned in Louis I at ECF No. 21-2, but that it was never submitted into evidence. Its ARTSM Kiosk number is 15-509@16, submitted by Sadiq on 3/7/2015, and responded to by the Chaplain on April 8, 2015. In that ARSTM, Sadiq stated,

"I am Muslim and requesting a change in both the hygiene, grooming, and religious policy to enable me to grow and wear my beard at 1/4 inch. The Qur'an and the life example of Muhammad — Sunnah are the two main sources of authority in Islam. See SCDC Policy/Procedure PS-10.5.2, "Inmate Religion" and also PS-10.5.18,..... Hadith Book "Sahih Al-Bukhari," Chapter 11 mandates

that Muslims shave the mustache and grow their beards. See pg. 949. The policy currently administered is substantially burdening my exercise of religion, serves no penological interest, and is not in the least restrictive means of a compelling penological interest. Furthermore, the Courts have recently determined that Muslim prisoners maintaining their beards at 1/4 inch does not impair a prison's interest in order, security, or efficiency. See Holt v. Hobbs, 2015 WL 232143"

However, the Chaplain's response does not address Sadiq's request whatsoever, as she (the Chaplain) responded with,

"We are currently out of hygiene, you will have to wait to sign up for it when we resume. Do not use the kiosk for hygiene. Sign-up sheets will be place[d] in the dorm when we have hygiene." [see attached Decl. of Sadiq at P. 32-33 ]

Simply put, and as stated earlier, the use of Section 4.7 of the Religious Policy is impracticable. The aforementioned accounts/exhibits are prima facie evidence that this systematic mechanism of SCDC's officials are consistent and not isolated. The crux is that the defendant argues many of Sadiq's RLUIPA claims are not ripe/justiciable, because some of Sadiq's informal resolutions went thru other SCDC departments instead of the Chaplain, yet in almost all of the exhibits (just shown) ~~know~~ the chaplains, and the IGC, and even the CHIEF GRIEVANCE BRANCH (Felicia Mckie) ~~stated~~ that Sadiq should have use the "appropriate department" (departments other than the Chaplain, i.e., security, Policy Developement, and ~~or~~ Authorized Property), before submission of the Step-1 Grievance.

Another conundrum with inmates like Sadiq utilizing section 4.7 of the Religious Policy is that it would conflict with the grievance policy almost every time an inmate ~~does~~ try to use it. SCDC Policy/Procedure GA-01.12 "Inmate Grievance System" at Section 13.2 reads in relevant part,

"Inmates must make an effort to informally resolve grievance by submitting a Request to Staff Member Form to the appropriate supervisor/staff within eight (8) working days of the incident ...."
~~whereas section 4.7 of the Religious policy reads in relevant part,~~
~~"The request will be considered at the time of the policy's annual review."~~
~~To put this into context, unless the Policy Review Committee~~

pg. 12 of 22

.... If informal resolution is not possible, the grievant will complete Form 10-5, step 1, ~~which~~ ..... and will place the form in a designated grievance drop box within five (5) working days of the alleged incident."

Nevertheless, section 4.7 of the Religious Policy in relevant part reads,

"The request will be considered at the time of the policy's annual review."

To put this into context, unless the Policy Review Committee immediately considers Sadiq's request within the five (5) days of the Chaplain's response to Sadiq (instead of at their **ANNUAL REVIEW**), this remedy at Section 4.7 of the Religious Policy is clearly a dead end. Notwithstanding the above, ~~SCDC~~ SCDC Policy/Procedure GA-06.04, "Request To Staff Member" at section **3.6** reads,

"All RTSM should be responded to within 45 calendar days from date of entry in the Kiosk....."

Here, It goes without saying that if the Policy Review Committee's consideration is suppose to be included in the Chaplain's response to inmates, then unless the Policy Review Committee considers Sadiq's requests within the forty-five (45) days (along with the Chaplain/Chief Pastorial Branch's consideration) of the Chaplain's response to Sadiq (instead of at their **ANNUAL REVIEW**), this remedy at Section 4.7 of the Religious Policy is clearly a dead.end.

Thus because the administrative remedy in accordance with the dictates of Section 4.7 has now been proven to be 'unavailable' as set forth by the Supreme Court's ruling in <u>Ross</u>, each of the RLUIPA claims brought in this case are in fact ripe for adjudication to allow this Court to weigh in on the issues.

**II.)** Sadiq objects to the Magistrate's R/R to "deny as moot Plaintiff's motion in limine [ECF No. 67)" on pg. 9 of the Judges Report/Recommendation. In light of Sadiq's aforementioned arguments/exhibits, this Court can now discern a relevant distinction between the case the Magistrate Judge relied upon and the present case to determine that this Court may proceed to

pg. 13 of 22

consider Sadiq's Motion in Limine:

III) As a consequence to the Magistrate Judge's reasoning that "Plaintiff's current claims are not yet final for [her] review" (ECF 90 at 9), her analyzing of both parties remaining arguments were not weighed upon. In light of previous arguments made in this instant brief, Sadiq objects to the Magistrate Judge's determination not to review the remaining arguments of the parties and making a report of recommendation concerning them.

IV) Nonetheless, the defendants assert "there is no requirement in RLUIPA or the supporting case law that the government must furnish the inmate free-of-charge what he needs to carry out the practice of his religious exercise" [ECF 89 at 6] However, Sadiq has already addressed this issue at ECF 82 at 17, in which the defendants are obviously ignoring. But still, they cite 3 cases to support their position — 3 cases that are starkly distinguished from the instant case.

In regards to the defendants reliance on <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 720, n.8 and <u>Charles v. Verhagen</u>, 348 F.3d 601, 605 (7th Cir. 2003), this Court will find that <u>Moussazadeh v. Texas Dept. of Criminal Justice</u>, is most instructive on this issue and stated the following,

"TDCJ argues that what is at stake is not pressure on forbidding religious practice but 'underwriting' it. TDCJ cites Cutter, 544 U.S. at 720 n.8, 125 S.Ct. 2113, which noted that 'RLUIPA does not require a State to pay for an inmate's devotional accessories.' But for two reasons, Cutter is distinguishable from the case at hand: First, it addressed an Establishment Clause challenge to RLUIPA. The Court was not focused on analyzing the question of a substantial burden. Second, the benefit requested in Cutter was provision of religious items, not food. Like the unemployment payments at issue in Sherbert, food is an 'essential' benefit given to every prisoner, regardless of religious belief. Based on Sherbert, Thomas, and Adkins, denial of religiously sufficient food where it is a generally available benefit would constitute a substantial burden on the exercise of religion." [<u>Moussazadeh v. Texas Dept. of Criminal Justice</u>, 703 F.3d 781 at 793 (USCA, 5th Cir, Dec. 21, 2021)].

Just like the case of Moussazadeh is distinguable from the case of Cutter, so is the current case before this Court ~~distinguable~~ is distinguable from both the case of Cutter and Charles. The defendant themselves pointed out that the Charles case was about "prayer oil". [see ECF 89 at 6], while the Cutter case was about "religious literature and/or items necessary to practice their religion", [see Gerhadt v. Lazaroff, 221 F.Supp.2d 827, at 832 (Direct History of Cutter)]

In regards to the defendants reliance on Lewis v. Sullivan, 279 F.3d 526, 528 (7th Cir. 2002), that case does not support a rule that prison officials may deny a prisoner a religious diet. "In Lewis, the court upheld the constitutionality of 28 U.S.C. §1915(g), which requires prisoners to prepay the full filing fee for a federal civil action if three or more of his previous lawsuits have been dismissed as frivolous or for failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical harm..... That holding has no bearing on this case because plaintiff is not subject to §1915(g)." [see Ripp v. Nickel, 838 F.Supp.2d 861 at 867 (modified)

Accordingly, the defendants reliance on Lewis is equally misplaced, as it is distinguable from this sub judice.

Ⅴ) The defendants have misrepresented to the Court that Sadiq refers to the ability to receive gifts or charity from family/friends as the "Zakat". [see ECF 89 at 7] To the contrary, Sadiq merely defined "Zakat or Zakat-ul-Fitr" using supportive sources, and then gave context to how it furthers his argument in one of the "three (3) heightened times out of the year that Muslims are commanded to both give and receive charity to one another as an act of worship". [see ECF 82 at 20-21] Considering that Zakat-ul-Fitr has a fixed stated time to occur annually It cannot be inferred that zakat-ul-Fitr refers to all three (3) of the heightened

times to give charity, notwithstanding the fourth heightened time to give/receive charity mentioned by Sadiq at pg. 22 of ECF 82.

Further, the defendants misrepresent that Sadiq "is not restricted from receiving monetary contributions to his Cooper Trust Fund account during the Eids feasts and/or Rhamadan." [ECF 89 at 8] Significant however, is that pg. 3 of the defendants exhibit entitled "SCDC website excerpt on 'Sending Money to an Inmate'" confirms Sadiq's argument that contributions to inmate financial accounts will be restricted to individuals who are listed on the inmate's approved visitor list. [see ECF 52 at 31 and its attached Decl. of Sadiq at P. 86]

Notably, the time stamp of the defendants exhibit is "4/14/26, 4:40 AM". Yet, on April 7, 2026, Sadiq along with almost every other inmate in his living quarters received a memorandum reflecting that multiple family/friends who were previously approved to visit have been removed from their visitation list. [see attached Decl. of Sadiq at P. 34-35, also Decl. of Christopher C. Foster, also Decl. of <u>Devodus A. Rouse</u> at P. <u>6-11</u>

As a result, Sadiq submitted an ARTSM No. 26-04347800 to the Visitation Department on 4/7/26, stating,

"Please inform me of the reason as to why all but one person has been removed from my visitation list. Respectfully, Louis",

In response, the Visitation Department wrote,

"There was a recent issue that caused all pending applications to be rejected in the GTL system. If your visitors application status was affected by this error, they have been instructed to resubmit their application. When they are submitting please ensure they upload their images (driver's license) and answer all questions and complete the application in its entirety. We are informing you of this very important step as this is causing a delay in the processing as persons are not following instructions, please tell them to check their status before resubmitting an application as duplicate applications also slow down the process. Please do not submit additional automated requests to staff asking

the status of your visitors as this ~~is~~ also slows down the approval process. GTL/Viapath is working on your tablet. Next steps: If this applies to your pending visitors, please have them sign in to the GTL system, re-upload their ID images (driver's license or equivalent) so that we can process their application in the order in which it was received. Please advise your potential visitor to refrain from entering duplicate applications as this slows the process for review and approval. Thank you for your continued patience." [see attached Decl. of Sadiq at ₱ 36-37

Interestingly enough, the Visitation staff member skirted Sadiq's issue regarding "previously approved family/friend visitors" and talked solely about "pending applications" of "potential visitors".

Further SCDC Form 19-127 "Request For Visiting Privileges" attached hereto, has a questionnaire. Among them is no. 6, which asks,

"Did you **KNOW** this inmate prior to his/her incarceration? (Before he/she was in jail or prison.)

YES☐  NO☐  (You may be asked to verify how/when.)"

This particular question puts a visitation applicant into a double bind if they've only became friends with an inmate after the inmate's arrest:

1) If the applicant marks the box indicating "No", then their application will be rejected. [see attached Decl. of Sadiq at ₱. 38, also Decl. of Rouse at ₱. 9-11]

2) If the applicant marks the box indicating "Yes", then they risks the possibility of their the visitation privileges being revoked entirely. [see SCDC/Policy OP-22.09 "Inmate Visitation" at section 5.13 entitled "Falsification of Information"]

The fact of the matter is SCDC has indeed effectively restricted inmates such as Sadiq from receiving monetary contributions to his Cooper Trust Fund Account not just during the Eids feasts and/or Rhamadan, but year round. By way of another example, assuming arguendo that an inmate such as Sadiq, had distant relatives that desired to contribute to Sadiq's E.H. Cooper Account whereas the applicant is willing to provide their documents of identification, the relatives that form the link of relation between the applicant and the inmate may not be so willing to provide the appropriate documentation (i.e., certified

pg. 17 of 22

long form Birth Certificate, valid marriage (license) to prove and verify the relationship to the inmate. Thus this applicant would not be able to contribute to Sadiq's E.H. Cooper Account. If section 5 of the visitation Policy makes proof of kinship a requirement for minor nieces/nephews, then surely it's a requirement for older "distant" relatives and/or relatives that Sadiq has never met who are not listed on his relative screen and have possibly been born after his arrest over 20 years ago. If the aforementioned is not prima facie that SCDC has a placed a restriction on Sadiq from receiving monetary contributions to his Cooper Trust Fund Account during the Eids feasts and/or Rhamadan, then french fries are not potatos.

VI) On page 4 of ECF 89, the defendants assert that the Affidavit of Walter Thomas is not based on personal knowledge and that Thomas attests what he was told by a third party. To the contrary, Thomas attests that he gave his "affidavit on the basis of [his] personal knowledge of facts and circumstances concerning the matters described [t]herein." [ECF 52-5 at P. 1] No where in the affidavit does Thomas make mention that he was informed by someone else of anything he declared/stated. In fact, the only condition and/or ~~instance~~ instance he mentioned about that was "from information/belief", was about when Wateree Correctional Institution ended its approval for visitors to bring food into the institution while on visit. [see Id. at P. 6]

Regardless, the defendants and their attorney are ignoring the fact that in another RLUIPA case involving the same parties/attorney, a seperate witness (Sammy Lee Adams) swore under oath that he had been "admitted" into the S.C.D.C. on 10/24/85"..... he was "incarcerated when Michael Moore became the Commissioner of S.C.D.C., and the ban of conjugal visits and drastic policy changes incurred. Prior to those changes, there wasn't much of a grooming policy at all. One could wear just about anything, in any color, and could style their hair in any way. Family and friends of an inmate could send care packages directly to an inmate. The packages had to be delivered in a card-board box with

the weight of its contents not exceeding 50 lbs." [see Louis v. Anderson, et al, C/A No. 1:25-cv-00294-BHH-SVH, ECF 20-9 at P. 2, 15-17] Notably, these particular attestments were from personal knowledge rather than from information/belief.

In addition, the defendants assert that Sadiq offered inadmissible "testimony regarding an FCI-Bennettsville award of a contract for $17,600, from [a] Halal vendor." [ECF 89 at 4] In actuality, Sadiq inadvertently omitted to include in ECF 82-1 at P. 22, that the contract mentioned therein was for the vendor "L.A. Food, LLC" to provide certified Halal prepackaged meals to inmates at FCI-Bennettsville, who chooses to eat a Halal diet, and that Sadiq obtained this information from the following website https://www.federalcompass.com Notably in ECF 82 at 15, Sadiq cites the website https://www.federalcompass.com as a reference for the contract and then cites the website https://www.lafoods.com for ~~the vendor mentioned above~~ the contact information for the vendor "L.A. Food, LLC." [see attached hereto Suppl'm. Decl. of Sadiq at P. 39      ]

Similarly, Sadiq inadvertently omitted to include in ECF 52-4 at P. 46(a) that he came to believe that the California D.O.C. provided Halal-certified meat pursuant to 15 Cal. Code Regs. § 3054.4 "Religious Meat Alternate Program". [see attached hereto Suppl'm. Decl. of Sadiq at P. 40      ]

Similarly, Sadiq inadvertently omitted to include in ECF 52-4 at P. 46(b) that he came to believe that the average contracted rate of [$2.00 to $4.00] per inmate, per day was according to the following website, https://oig.justice.gov/sites/default/files/reports/26/021.pd... [see attached hereto Suppl'm. Decl. of Sadiq at P. 41      ]

Likewise, Sadiq inadvertently omitted to include in ECF 52-4 at P. 46(e) that he came to ~~know~~ believe that the Ohio D.O.C. provided inmates desiring a Halal~~ow~~ Diet was from reviewing the following webpage, https://~~www~~.cbsnews.com/news/us-Muslim-inmates-sue-over-meal-preparation/ [see Suppl'm. Decl. of Sadiq at P. 42 attached herewith.]

In addition, Sadiq inadvertently omitted to include in ECF 52-4 at P. 46(d) that he came to know of the Oklahoma D.O.C. providing [kosher diets] to inmates at a ~~rate~~ contracted rate of [$2.50 to $3.50] from the following webpage, https://okpolicy.org/2-551/ [see attached herewith Suppl'm. Decl. of Sadiq at P. 39 ]

Similarly, Sadiq inadvertently omitted to include in ECF 52-4 at P. 46(e) that he came to know of New York D.O.C.'s offering of Halal [and Kosher] diets to inmates came from the following website, https://www.NYC.gov/asset/doc/downloads/directives/3250r-kosher_halal [see Suppl'm. Decl. of Sadiq at P. 43 attached herewith.]

Likewise, Sadiq inadvertently omitted to include in ECF 52-4 at P. 46(f) that he came to believe that the Wisconsin D.O.C. was providing Halal diets to inmates after a thorough analysis of the following cases, @ Annamalai v. Malcolm, 2025 WL 2322416 at 5-6 (U.S.D.C, Wisconsin, Aug. 12, 2025); and @ Curtis v. Constantine, 2025 WL 1546508 at 6 (U.S.D.C., E.D. Wisconsin, May 30, 2025). [see Suppl'm. Decl. of Sadiq at P. 44 attached herewith.]

In addition, Sadiq inadvertently omitted to include in ECF 52-4 at P. 46(g) that he came to know that Maryland's D.O.C. was offering inmates a Halal diet was a result of reviewing Md. Code Regs. 12.03.02.01(6), [see Suppl'm. Decl. of Sadiq at P. 45]

pg. 20 of 22

Similarly, Sadiq inadvertently omitted to include in ECF 52-4 at P. 46(i) that he came to believe that the Pennsylvania D.O.C. provided inmates a halal diet was due to SCI-Huntington (a Pennsylvania prison) had changed its "policy allowing inmates to observe a halal diet." [see White v. Wireman, 500 F. Supp. 3d 327 at 334 (U.S.D.C., M.D. Pennsylvania, Nov. 10, 2020; also see Suppl'm. Decl. of Sadiq at P. 46    ]

Likewise, Sadiq inadvertently omitted to include in ECF 52-4 at P. 101 how he came to believe that several of SCDC's Designated Facilities other than Fairfield County Detention Center permitted the SCDC inmates housed in their facilities to receive gifts/donations directly from family/friends. See attached updated "Designated Facility Vacancies" Memorandum at pg. 1, 2, 3, and 5; also see attached hereto Suppl'm. Decl. of Sadiq at P. 47    ] Notably, the Abbeville County Detention Center, Anderson City Jail, Dillion County Detention Center, Pickens County Dentention Center (LEC) allow Family members to bring necessities for the inmates during weekend visits, according to the memo.

VII) "The district court's decision whether to consider additional evidence is committed to its discretion, any refusal will be reviewed for abuse." Attempts to introduce new evidence after the magistrate judge has acted are disfavored, though the district court may allow it when a party offers suffient reasons for so doing." [see Louis I at ftnt. 11 (citations omitted)]

Here, Sadiq attests that the reason for providing new evidence was ① in an effort to expand on and support assertions previously made and considered by the Magistrate Judge; ② because he was not afforded the opportunity to respond to ECF 89 (with the supporting documents) before the Magistrate Judge filed her R/R. [see attached Decl. of Sadiq at P. 48    ] Also, see Louis I at ftnt. 11 (District Judge considered new evidence of defendant in an effort to expand on and support assertions previously made

and considered by the Magistrate Judge.)

VIII) For the foregoing reasons, Sadiq respectfully requests the Court to overrule the Magistrate Judge's R/R [ECF 90], grant Sadiq's motions for injunctive relief and for summary judgment [ECF Nos. 50, 52], grant Sadiq's motion in limine [ECF No. 67], and dismiss the defendants motion for summary judgment [ECF No. 59].

Respectfully Submitted,

Darryl Keith Louis Jr.
TrCI/30-09
84 Greenhouse Rd.
Trenton, SC 29847

Pro Se

5/8/26

pg. 22 of 22